## Case No. 1,384.

### BIBBINS v. BROOKFIELD.

### The TOPAZ.

[17 Betts, D. C. MS. 36.]

District Court, S. D. New York. Nov. 12, 1849.

SEAMEN—WAGES—DESERTION—UNSEAWORTHINESS —INSUFFICIENT FOOD—EVIDENCE.

[1. In the absence of proof to the contrary, the presumption obtains that the hiring of a crew is for the return of the vessel to her port and their common port, where the service commenced.]

[Compare Graham v. The Exporter, Case No. 5,667.]

[2. Alleged unseaworthiness of a vessel, or insufficient supply of wholesome provisions for the support of the crew, unless clearly established, will not, in an action for wages, justify a seaman's desertion of his vessel before the completion of the voyage for which he shipped.]

[3. In a libel for wages, to which the defense is desertion, the libellants may show legal cause for such desertion, without alleging same in the libel, since such cause is not the foundation of the action.]

[4. Three weeks' time, consumed mostly in discharging cargo, and in taking another at a port during the progress of the voyage, does not show such an abandonment of the voyage as will justify desertion and a suit for wages at such intermediate port.]

[In admiralty. Libels by William Bibbins and John Wilson, respectively, against John A. Brookfield, master of the brig Topaz, for wages. Both cases were heard together, and the libels were dismissed.]

BY THE COURT. The libel articles upon a shipping contract made in January, 1849, for a voyage on board the brig Topaz from Newburn, North Carolina, to the West Indies, and thence to the port of New York, at $15 per month wages, and charges that the voyage was fully performed, and ended at New York the 15th of May last, and that there is due the libellants therefor the sum of $86, and prays for the production of the shipping articles on the hearing, and for a decree for the wages due him.

The answer denies the contract set up by the libel, and avers the agreement was from Newburn to the West Indies, thence to a port of discharge in the United States, and thence to Newburn; and that the libellant agreed by the shipping articles signed by him to perform that voyage, and not leave the vessel without consent of the commanding officer until the voyage, so to end at Newburn, should be terminated; and that he should not demand or be entitled to the wages, or any part thereof, until the arrival of the vessel at Newburn. That it also stipulates forfeiture for misconduct and insubordination, such as are usually inserted in shipping articles.

The respondent avers that the libellant duly executed the agreement, but denies he ever performed the voyage or was discharged therefrom; that, on the contrary, he deserted at New York, and refused to complete the voyage to Newburn. The respondent also alleges payment of $27.20 towards the wages, and that damages have been sustained by his desertion to the amount of $45. John Wilson, another of the crew, brought his action for wages on the same facts; and, the pleadings and proofs being the same, both cases were heard together. The articles produced by the respondent on the call of the libellants, and to the genuineness of which no objection was made, showed their names inserted as seamen; Wilson on the —— day of January, 1849, and Bibbins on the 9th of the month, each at $15 wages. It stated the voyage to be on board the brig Topaz, of Newburn, North Carolina, to one or more ports in the West Indies; thence back to a port of discharge in the United States; the voyage to end at Newburn. The stipulation in respect to the payment of the wages is in print, and as follows: "It is further agreed that no officer or seaman belonging to the said vessel demand or be entitled to his wages, or any part thereof, until the arrival of the said vessel at the last abovementioned port of discharge, and her cargo delivered." Admitting the articles to be properly in evidence, this agreement is valid and obligatory so far as respects the time and place of payment. The Walterstorff, [Case No. 7,413;] Brown v. Hull, [Id. 2,018.] But the court will not permit such agreement to divest seamen of their equitable rights to wages from the mere fact of the vessel's not having arrived at the port named where suit is brought. The stipulation is rather to be regarded as one protective of the sound interests of seamen than in derogation of them, and will be enforced in that sense. The Mary Jane, [Id. 9,215.] This engagement is apparently fair and just in respect to the rights of these libellants. It places their earnings at their command at the port where they shipped, and where it will most naturally meet their own necessities or those of their families; and if the discretion was left, with the court, no disposition would be left to intermeddle with or change the arrangement. This point must then be conclusive against the maintenance of the action, unless the libellants show legal reason for leaving the vessel before reaching the port of Newburn.

The first mate testifies she discharged her cargo from the West Indies at this port, and took in another for Newburn, and at the time of his examination she was ready to sail for that port. That was about three weeks after her arrival here. No abandonment of the voyage home was accordingly indicated, nor any purpose to postpone or evade the just claims of the libellants to their compensation; and the manifest equity of the case concurs with the rule of law that they were bound to await a reasonable period for the voyage to be completed should she fail ever arriving at her home port before instituting the action.

·The libellants attempt to show there was adequate causes justifying their refusal to continue with the vessel, and to entitle them to collect their wages here. The day after she came into port and was exclusively moored, they both left her, and received their wearing apparel, etc., without the consent of the master, and against his positive prohibition. If the voyage was yet in progress, such abandonment of the vessel, unless excused by some of those necessities recognized by the maritime law, would be a desertion, working the forfeiture of all antecedent wages earned. The grounds taken by the libellants are (1) that the voyage terminated at New York; (2) that the ship was not in a seaworthy condition; and (3) that the libellants were not supplied with wholesome provisions sufficient for their support.

The proof is that the vessel was owned in Newburn, and that the libellants had families residing there. They give no evidence other than the shipping articles, and if those articles should be rejected for want of legal proof, the presumption must be that the hiring was for the crew to return in the vessel to her port and their common home port, where the service commenced. The testimony of the crew to the unsoundness and unseaworthiness of the vessel is too slight to justify her condemnation, and it is contradicted by the master, who speaks of her as entirely seaworthy, and denies the rottenness or insecurity of her masts, charged by the libellants. It was not necessary for them to allege those defects in their libel, as they are not the foundation of the action. The suit is for wages, and to the defense thereto of desertion. The libellants may give evidence showing legal cause for leaving the vessel. The exception· to the admissibility of the proofs cannot be supported, but the evidence does not amount to the justification claimed from it. I find nothing in the proofs establishing the charge that the crew had not sufficient and proper provisions supplied them. A ship's fare in its best condition will not probably compare with that furnished at the table of respectable boarding-houses or private families in many particulars of preparation, variety, and flavor. It will doubtless be found little attractive or palatable; yet courts will not be disposed to attempt nice criticisms or requirements in those respects. They will see sailors fairly remunerated if straightened improperly in their allowances, or if the provisions are unwholesome or noisome, or cooked in a manner to injure or nauseate the men. Only one witness, and he a libellant, testifies to the bad quality of the provisions.

I am compelled to regard the allegations of the unseaworthiness of the vessel and badness of provisions as gotten up by these black men to excuse their refusal to work the vessel home, and to hold that they have failed to show any reliable evidence of any reasonable excuse for leaving her. Whether, then, the articles be adequately proved or not, these men have not fulfilled their shipping engagement, and as they admit articles were signed, they had no right to leave the vessel until the voyage was completed. Libels dismissed, with summary costs.